**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LISA JOHNSON-BARKER, as Administrator of the Estate of Markus Johnson,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.; THE BANTRY GROUP CORPORATION; SBW INVESTMENTS, LLC; TDWJR INVESTMENTS LLC; RICHARD W. TALARICO; HJP ACQUISITION LPG; the G. NORMAN MCCANN IRREVOCABLE TRUST FOR N. JEFFREY MCCANN; and the 2017 N. JEFFREY MCCANN FAMILY TRUST<br><br>Defendants. | ) | Case No.<br><br>Jury Trial Demanded |

**COMPLAINT**

Now comes Plaintiff LISA JOHNSON-BARKER, by and through her undersigned attorneys, complaining of Defendants WEXFORD HEALTH SOURCES, INC.; THE BANTRY GROUP CORPORATION; SBW INVESTMENTS, LLC; TDWJR INVESTMENTS LLC; RICHARD W. TALARICO; HJP ACQUISITION LPG; the G. NORMAN MCCANN IRREVOCABLE TRUST FOR N. JEFFREY MCCANN; and the 2017 N. JEFFREY MCCANN FAMILY TRUST, stating as follows:

**INTRODUCTION**

1. This is an action to avoid a series of fraudulent transfers undertaken by Defendants, which threaten to prevent Plaintiff from recovering fair compensation for the grotesque violation of a young man's most fundamental constitutional rights.

2. Plaintiff's son, Markus Johnson, died from severe dehydration while in the custody of the Illinois Department of Corrections ("IDOC") on September 6, 2019. He was 21 years old.

3. Defendant Wexford Health Sources, Inc. ("Wexford") was responsible for providing Mr. Johnson medical and mental health care pursuant to its contract with the State of Illinois. Wexford wholly failed in this responsibility.

4. On August 19, 2021, Plaintiff, serving as the Administrator of her son's Estate, filed a Complaint in the United States District Court for the Central District of Illinois naming Wexford and fourteen of its employees as defendants (the "Underlying Case").[1]

5. The evidence in the Underlying Case shows egregious and systemic failures by Wexford and its employees with respect to Mr. Johnson's care. On July 1, 2026, the Illinois district court denied Wexford's request for summary judgment. The case is now set for trial in November of this year.

6. Given Mr. Johnson's youth, his short prison sentence, and the extraordinary indifference reflected in the record, Defendants Wexford, Bantry, and the investor Defendants have long been on notice that Wexford's potential liability in the Underlying Case is substantial and will likely total tens of millions of dollars. Less than a month after the lawsuit was filed, Wexford officials acknowledged internally that they were facing a "big lawsuit." Plaintiff made a demand of more than $20 million to settle the case in September 2022.

7. Despite facing substantial liability in the Underlying Case and numerous other lawsuits, from 2019 to the present Wexford has made such sizable transfers to its parent company, Defendant Bantry Group Corporation (the "Bantry Group"), that Wexford apparently lacks sufficient funds to pay anywhere near the likely judgment in the Underlying Case. Wexford and

---

[1] ECF No. 1, *Johnson-Barker v. Wexford Health Sources, Inc.*, No. 21-cv-1234-CSB-EIL (C.D. Ill. Aug. 19, 2021).

the Bantry Group have also made significant shareholder distributions in the years since Mr. Johnson's death. During the same time period, Wexford failed to maintain an insurance policy sufficient to cover its exposure to multi-millions in legal liability.

8. Each of these transfers, individually and collectively, are voidable under the Pennsylvania Uniform Voidable Transactions Act ("PUVTA"), 12 Pa. C.S.A § 5101 *et seq*. Accordingly, and as set forth below, Plaintiff brings this lawsuit to void the fraudulent transfers made by Defendants since 2019 and to stop Defendants from making future fraudulent transfers until any judgment or settlement obtained by Plaintiff is paid in full.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and the parties are citizens of different states.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim, or a substantial part of property that is the subject of the action, is situated in this District.

**PARTIES**

11. Plaintiff Lisa Johnson-Barker is the mother of Markus Johnson, and the duly appointed Administrator of the Estate of Markus Johnson. Plaintiff resides in Illinois and Markus Johnson's Estate was filed in the Probate Division of the Circuit Court of Lake County, Illinois.

12. Debtor Defendant Wexford Health Sources, Inc. ("Wexford") is a Florida corporation headquartered in Pittsburgh, Pennsylvania. Wexford provides medical services to inmates in prisons and jails throughout the United States, including (until 2025) in Illinois.

13. Transferee Defendant Bantry Group Corporation (the "Bantry Group") is a Florida corporation headquartered in Pittsburgh, Pennsylvania. It owns one hundred percent of Wexford's

capital stock. Wexford is the only operating subsidiary of Bantry. Bantry's revenue is generated exclusively from Bantry's purported provision of management services to Wexford.

14. Transferee Defendant SBW Investments, LLC ("SBW Investments") is a Delaware limited liability company. On information and belief, its registered agent's address is 1209 Orange St., Wilmington, Delaware 19801.

15. Transferee Defendant TDWJR Investments, LLC, is a Delaware limited liability company. On information and belief, its registered agent's address is 1209 Orange Street, Wilmington, Delaware 19801.

16. Transferee Defendant Richard W. Talarico is an individual who, on information and belief, resides at 3000 Grandview Farms Place, Bethel Park, Pennsylvania, 15102.

17. Transferee Defendant HJP Acquisition LP is a Pennsylvania limited partnership. On information and belief, its registered agent's address is 535 Smithfield Street, Suite 960, Pittsburgh, Pennsylvania 15222.

18. The G. Norman McCann Irrevocable Trust for N. Jeffrey McCann is an irrevocable trust created under North Carolina law pursuant to a trust agreement dated August 22, 2017, with a situs located in Henderson County, North Carolina.

19. The 2017 N. Jeffrey McCann Family Trust is a trust created under Delaware law pursuant to a trust agreement dated September 19, 2017, with a situs located in the State of Delaware.

20. The G. Norman McCann Irrevocable Trust for N. Jeffrey McCann and the 2017 N. Jeffrey McCann Family Trust (collectively, the "Jeffrey McCann Trusts") hold shares of common voting stock in the Bantry Group. The beneficiary of both trusts is N. Jeffery McCann, who serves as the Chairman and Director of the Bantry Group.

21. Information available in public filings indicates that other Bantry shareholders may have received distributions during the time period relevant to this claim. To the extent that additional parties are revealed in discovery to have received fraudulent transfers, Plaintiff will seek leave of the Court as necessary to amend the complaint.

## ALLEGATIONS

***Wexford's Corporate Structure***

22. G. Norman McCann ("McCann") founded Wexford, along with co-founders, in 1992.

23. In the three decades since, Wexford has entered into contracts to provide medical and mental healthcare in correctional facilities across the country, generating substantial revenue through lucrative contracts worth hundreds of millions of dollars. Despite Wexford's cries of poverty to its creditors, Wexford's website crows that Wexford is "exceptionally stable, both operationally and financially."[2]

24. The Bantry Group is Wexford's parent company, owning one hundred percent of Wexford's capital stock. Wexford is the only operating entity of Bantry.

25. Wexford and Bantry share a Chief Executive Officer (Daniel Conn), a Chief Administrative Officer (Elaine Gedman), and a Chief Financial Officer (John Froelich). Jeffrey McCann, one of McCann's six children, is Bantry's Chairman and Director.

26. In 2003, McCann purchased 755 shares of the Bantry Group from Henry Posner, Thomas Wright, and Defendant Transferee Richard W. Talarico (together, the "Sellers"). The stock purchase was financed through a Promissory Note and was contingent on an Additional Consideration Agreement, whereby McCann agreed to pay one-half of certain defined distributions

[2] https://www.wexfordhealth.com/ (last accessed, 8/13/2026)

to the Sellers. The Sellers and McCann also entered a Stock Pledge Agreement (together with the Promissory Note and the Additional Consideration Agreement, the "Loan Documents"). The Sellers sold all their voting stock in Bantry to McCann and took a security interest in the Stock.

27. Upon information and belief, Defendant Transferees SBW Investments and TDWJR Investments now own Wright's interest in the Loan Documents.

28. Upon information and belief, Defendant Transferee HJP Acquisition now owns Posner's interest in the Loan Documents.

29. Following the 2003 stock purchase, McCann owned 80% of the outstanding Bantry shares. McCann subsequently transferred many of those shares to various trusts for his family, including the Jeffrey McCann Trusts.

30. Pursuant to subsequent agreements, the McCann family trusts, including Jeffrey McCann Trusts, remain bound by the terms of Loan Documents, under which one half of certain distributions by Bantry still must be paid to the current owners of the Sellers' interests.

***Markus Johnson's Death***

31. On September 6, 2019, Markus Johnson died while incarcerated at Danville Correctional Center in Illinois. He was 21 years old.

32. When Mr. Johnson arrived in IDOC custody, his mental illness was well-controlled, and he was in good physical condition. During his incarceration, he experienced a rapid and alarming deterioration in his mental and physical health.

33. Soon after he arrived at Danville, Mr. Johnson—who had a documented history of psychiatric hospitalizations—stopped taking his psychiatric medications. He then stopped eating and drinking. As documented by Wexford providers, Mr. Johnson began to show obvious signs of

dehydration, including chest pain, abdominal pain, mental decline, jaundice, and disorientation. He lost 61 pounds in only two months.

34. Despite the emergent nature of Mr. Johnson's condition, Wexford medical and mental health providers provided no meaningful treatment of any kind. Ultimately, Mr. Johnson died from severe dehydration while a stash of IV fluids sat untouched only steps away.

35. The treatment that Mr. Johnson received prior to his death was so shocking and inhumane that it became the subject of a front-page article in the *New York Times* describing the "failures of the nation's prisons to care for the mentally ill."[3]

***The Underlying Case***

36. Plaintiff, Mr. Johnson's mother and the Administrator of his Estate, filed a Complaint on August 19, 2021, in the United States District Court for the Central District of Illinois.

37. Plaintiff alleges that by failing to provide Mr. Johnson with anything that resembled adequate medical and mental health care, Wexford and fourteen of its employees—Justin Young, Nitin Thapar, Justin Duprey, Lawisha Carter, Melanie Easton, Alexis Joseph, Darcy Davis, Anastasia Goin, Krysta Kincaid, Sandy Lemon, Tina Miles, Colleen Shults, Angelica Wachtor, and Courtney Walker-Henry—were deliberately indifferent to Mr. Johnson's serious medical needs in violation of the Eighth Amendment of the United States Constitution. Plaintiff further alleges that such deliberate indifference in the face of obvious risk to Mr. Johnson caused Mr. Johnson's untimely death.

38. Specifically, as to Wexford, Plaintiff has alleged, pursuant to 42 U.S.C. § 1983 that it was personally responsible for the violation of Mr. Johnson's constitutional rights. Plaintiff is

[3] Glenn Thrush, *When Prison and Mental Illness Amount to a Death Sentence* (May 7, 2024) https://www.nytimes.com/2024/05/05/us/politics/prison-mental-health-care.html.

seeking compensatory and punitive damages against Wexford for its misconduct. If Plaintiff prevails on her § 1983 claim against Wexford, Wexford will also be liable to Plaintiff for her attorneys' fees and costs, as well as prejudgment interest for the seven years since Mr. Johnson's death, and post-judgment interest.

39. Plaintiff also pleaded respondeat superior claims against Wexford. Pursuant to Illinois law, Wexford will accordingly be responsible for all compensatory damages awarded against each of the individual defendants identified above. Plaintiff has also raised state-law claims against Wexford directly under the Illinois Wrongful Death statute, 740 ILCS 180/1, and the Illinois Survival Act, 755 ILCS 5/27-6.

40. On July 1, 2026, the district court presiding over the Underlying Case denied Wexford and its employees' motions for summary judgment, ruling that Wexford had "elected to engage" in the correctional health care business "with open eyes and clear understanding and experience" regarding the systemic challenges of prison health care and "the obvious threshold requirement to not violate the constitutional rights of the imprisoned individuals they have been hired to care for."[4]

41. The Underlying Case is set for trial in November 2026. At trial, Plaintiff will seek compensatory damages, punitive damages, attorneys' fees, costs, and pre- and post-judgment interest. Wexford and its co-defendants will face joint and several liability. *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) (imposing joint and several liability in a section 1983 case); *Watts v. Laurent*, 774 F.3d 168, 179 (7th Cir. 1985) (same).

42. Indeed, Wexford itself has asked the Court to bifurcate the trial because of the potential for enormous liability. It has warned of "the potential for a significant damages award

[4] ECF No. 285 at 21, *Johnson-Barker*, No. 21-cv-1234 (C.D. Ill. July 1, 2026).

[and] dwindling insurance reserves" that could result in substantial liability for the individual defendants and stated that "the risk of liability by association is real when the evidence may show alleged widespread misconduct by and within an entity that employs the individual defendants."[5]

43. In recognition of the risks posed by the Underlying Case, the Illinois Department of Corrections has already settled related claims against the security staff for $6 million. A single Wexford former employee with separate insurance has resolved the case for an additional $1 million. Compared to the case against employees of the Illinois Department of Corrections and the individual care provider, the case against Wexford, the entity directly tasked with providing medical and mental health care to Markus Johnson in prison, is much stronger.

44. Based on verdicts in comparable cases, the Defendants in the Underlying Case—including Wexford itself—can expect to face liability in the range of $20 to $50 million.[6] Indeed, given the horrifying circumstances of Mr. Johnson's death, his young age, and the degree of Wexford's culpability, a jury verdict could well exceed these figures.

***The Fraudulent Transfers***

45. Wexford has contracted with at least nine states and numerous counties to provide correctional medical services to incarcerated individuals. Wexford is currently the correctional

[5] ECF No. 300 at 6-7, *Johnson-Barker*, No. 21-cv-1234 (C.D. Ill. July 22, 2026).

[6] Damages in far less egregious cases than this one have run to tens of millions of dollars. In *Slevin v. Bd. Of Comm'rs for Cty. of Doña Ana*, 934 F. Supp. 2d 1270 (D.N.M. 2012), a jury awarded a $22 million verdict, including $6.5 million in punitive damages, for denial of medical and mental health treatment. But that case concerned conditions of confinement, and the detainee did not die. In *Estate of Huggins v. Eastern Health Care*, No. 03CP4301217 (S.C.), a jury awarded a $28.5 million verdict, including $7.5 million in punitive damages, against corporate medical defendant after a 43-year-old diabetic died in custody of insulin deficiency. That case, too, is less severe than this one, where 21-year-old Markus died slowly and painfully of dehydration. And in *Barbaros v. Primecare Med. Inc.*, 2016 WL 7337379 (M.D. Pa. 2016), a jury awarded an $11.8 million verdict against the corporate medical defendant and its staff after a prisoner died by suicide. These verdicts do not account for Wexford's exposure to pre-judgement interest and the attorneys' fees and costs that Plaintiff will be entitled to under 42 U.S.C. § 1988, which will add millions to any award of compensatory and punitive damages.

medical services provider for all institutions in the New Mexico Corrections Department. It also has operative contracts in Arizona, Louisiana, Nebraska, New Hampshire, New Mexico, Texas, Virginia, and West Virginia.

46. Wexford has provided healthcare services to the Illinois Department of Corrections for nearly 30 years. In 2011, the state awarded Wexford a contract worth over $1 billion to manage the Illinois correctional healthcare program. Numerous lawsuits, as well as a federal consent decree, brought to light Wexford's severe failures to provide minimally adequate healthcare in Illinois prisons. In 2015, a federal monitor found that the IDOC's mental health care system was in a "state of emergency." Despite these serious and well-known problems, Illinois renewed Wexford's contract at the end of 2023 for a ten-year term at a cost of over $4 billion. The state rescinded the contract in June 2025.

47. These contracts in Illinois, as well as contracts with other states around the country, have generated enormous revenue for Wexford. For example, in 2021, Wexford's audited financial statements showed a revenue of $497,325,501 and "Income from operations before interest expense, depreciation and amortization and management fees" of $36,767,627. In 2022, Wexford's revenue was $510,571,072, and Wexford's "Income from operations before interest expense, depreciation and amortization and management fees" was $37,803,001.

48. Recently, despite its enormous revenue and tens of millions of dollars of income from operations, Wexford representatives have told Plaintiff that Wexford does not have adequate funds to pay a reasonable judgement in the Underlying Case.

49. Wexford representatives have also stated that Wexford does not have insurance sufficient to cover its likely liability.

50. Indeed, one of Wexford's lawyers recently stated that "Wexford has one foot in the grave and one foot on a banana peel."

51. These claims of insolvency are consistent with statements that counsel for Wexford has made repeatedly in separate litigation. In settlement discussions immediately prior to a jury trial in April 2026, Wexford stated that a verdict in that plaintiff's favor would result in the company seeking bankruptcy.[7] After the jury awarded a $3 million dollar verdict, Wexford continued to protest that the company was having financial difficulties and would seek bankruptcy protection.[8]

52. Wexford's repeated protestations of insolvency ignore years of multi-million-dollar transfers to its parent company, distributions to shareholders since Markus Johnson's death, and its woefully inadequate insurance. To the extent that Wexford lacks the funds or insurance to cover its potential liability in the Underlying Case, it is because Wexford has systematically funneled tens of millions of dollars per year to the Bantry Group, and through the Bantry Group to its shareholders, all while remaining severely underinsured.

53. Wexford and the Bantry Group (through their shared management) have had actual knowledge of Plaintiff's indisputably substantial claims since 2019. Nonetheless, on information and belief, Wexford has continued making payments on the order of $30 million dollars *per year* to Bantry under the pretext of a "management fee" and millions more as "Transfers" from Wexford to Bantry roughly equal to its operating income. A substantial part of those funds was then distributed to shareholders.

---

[7] *Larkin v. Wexford Health Sources, Inc., et al.*, No. 3:23-cv-03015-DJQ, ECF No. 105 at 2-3 (C.D. Ill. May, 22, 2026)

[8] *Id.*

54. In 2022, for example, Wexford transferred $28,623,224 to Bantry for "management fees". On information and belief, Bantry did not provide reasonably equivalent value for the management fees or the additional transfers from Wexford.

55. Further, in addition to the "management fees," Wexford made Transfers to Bantry as documented in its Consolidated Schedules of Cash Flows. Specifically, in 2022 Wexford transferred $19,753,469 to Bantry and Bantry distributed all $19,753,469, plus additional amounts from the management fee, to its shareholders for total distributions of $21,593,516.

56. On information and belief, Wexford made similar payments to Bantry and Bantry made similar shareholder distributions in each year from Mr. Johnson's death in 2019 to the present. During this same period, Wexford was grossly underinsured, with limits of only $3 million per occurrence and $10 million in the aggregate and no umbrella policy.

57. Plaintiff is a creditor of Wexford, as that term in defined under the PUVTA, 12 Pa. C.S.A. § 5101. A creditor is a "person that has a claim," and a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.*

58. The transfers that Wexford made from August 17, 2022 to the present, during which time period Plaintiff was a creditor of Wexford, are voidable under 12 Pa. C.S.A. § 5105(a) on the following grounds:

a. On information and belief, Wexford did not receive a reasonably equivalent value in exchange for the funds it transferred to Bantry, ostensibly for "management fees"; and

b. On information and belief, during the time period relevant to this lawsuit, 2019 to the present, the sum of Wexford's debts has exceeded the sum of its assets each

year. In 2022 and 2021, for example, Wexford's total liabilities exceeded its total assets by $23,549,971 and $11,065,053, respectively. During the same time period, Wexford has faced well over a hundred lawsuits around the country, resulting in millions of dollars in legal liabilities, as reflected by the "Professional Liabilities" on its balance sheet. Therefore, Wexford is actually insolvent within the meaning of 12 Pa. C.S.A § 5102 at the time the transfers occurred; or

c. The transfers of funds to Bantry from 2022 to the present rendered Wexford insolvent within the meaning of 12 Pa. C.S.A. § 5102, by depriving Wexford of the funds necessary to pay its outstanding legal liabilities and other debts.

59. Additionally, and in the alternative, the transfers that Wexford made from August 17, 2022 to the present, during which time Plaintiff was a creditor of Wexford, are voidable under 12 Pa. C.S.A. § 5104(a)(2) on the following grounds:

a. On information and belief, Wexford did not receive a reasonably equivalent value in exchange for the funds it transferred to Bantry, ostensibly for "management fees"; and

b. Wexford was engaged in the Underlying Case and other pending litigation, in relation to which its remaining assets were unreasonably small; or

c. Wexford reasonably should have believed that it would incur debts as a result of the Underlying Case that were beyond Wexford's ability to pay as they became due.

60. Additionally, and in the alternative, the transfers that Wexford made beginning no later than August 17, 2022 and continuing to the present, are voidable under 12 Pa. C.S.A. § 5104(a)(1) because Wexford made the transfers with actual intent to hinder, delay, or defraud one or more of its creditors.

61. Wexford's actual intent is demonstrated by the following:

a. The transfers were made to insiders. Specifically, the Bantry Group is an "insider" within the meaning of the statute because Wexford is owned entirely by the Bantry Group, Wexford is the only operating entity of the Bantry Group, the Bantry Group's revenue is generated exclusively from ostensible "management services" to Wexford, and the companies share executive officers.

b. Before the transfers were made, Wexford "had been sued or threatened with suit." By 2019, the circumstances of Mr. Johnson's death made a lawsuit foreseeable, and the present lawsuit was filed in August 2021.

c. The transfer was of substantially all of Wexford's assets, given that Wexford's net assets were negative at the time of the transfers.

d. The value of consideration received by Wexford from the Bantry Group was not reasonably equivalent to the value of the assets transferred.

e. Wexford was insolvent or became insolvent, as that term is defined in 12 Pa. C.S.A. § 5102, shortly after the transfers were made.

f. The transfers occurred shortly before or shortly after a substantial debt was incurred, specifically the present lawsuit and the numerous other lawsuits filed against Wexford.

62. As a result of Wexford's fraudulent transfers to the Bantry Group and the subsequent transfers to the McCann family and other shareholders, Wexford's assets are insufficient to pay a reasonable judgment in the Underlying Case.

**COUNT I**
**Fraudulent Transfer under the Pennsylvania Uniform Voidable Transfer Act**
**All Defendants**

63. Plaintiff incorporates the allegations set forth above as if set forth fully herein.

64. During the period from Mr. Johnson's death in September 2019 to the present, Wexford has fraudulently transferred funds to the Bantry Group, which then transferred a substantial portion of those funds to its shareholders, as detailed in the allegations above.

65. During the time period from August 19, 2021, when she filed her complaint in the Underlying Case, to the present, Plaintiff was and continues to be a creditor of Wexford, as defined under the PUVTA, 12 Pa. C.S.A. § 5101.

66. Each of those transfers, individually and collectively, are voidable under the PUVTA, 12 Pa. C.S.A. § 5104–5105.

67. Wexford and the Bantry Group made those transfers with the actual intent to hinder, delay, and defraud their creditors, and specifically with the intent to hinder, delay, and defraud Plaintiff's ability to collect a judgement in the Underlying Case.

68. Additionally, and in the alternative, Wexford and the Bantry Group made these transfers without receiving consideration of reasonably equivalent value, at a time when Wexford was actually insolvent or became insolvent as a result of the transfers.

69. Additionally, and in the alternative, Wexford and the Bantry Group made these transfers without receiving consideration of reasonably equivalent value, at a time when Wexford was engaged in the Underlying Case and other pending litigation, and Wexford's remaining assets were unreasonably small in relation to the Underlying Case and other pending litigation; or Wexford believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

70. Plaintiff is therefore entitled to the relief set forth in 12 Pa. C.S.A. § 5107 and 5108(b) against Wexford as creditor, the Bantry Group as the first transferee, and the remaining Defendants as subsequent transferees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Johnson-Barker respectfully requests that the Court issue a judgment in her favor and against Defendants on all counts, and enter an order:

(i) Voiding all monetary transfers from Wexford to Bantry and the McCann Family Trusts made before and after Plaintiff's claim arose, to the extent allowed under the applicable limitations period, in an amount sufficient to satisfy Plaintiff's claim;

(ii) Awarding an attachment against the money transferred from Wexford to the Bantry Group and from the Bantry Group to any subsequent transferee;

(iii) Enjoining Wexford and the Bantry Group from further disposition of funds until the underlying case is resolved and any award fully satisfied;

(iv) Appointing a receiver to take charge of the transferred funds;

(v) Punitive damages; and

(vi) Any other relief the court deems appropriate.

## JURY DEMAND

Plaintiff Lisa Johnson-Barker hereby demands a trial by jury under Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: August 17, 2026

Respectfully submitted,

/s/ Carl A. Frankovitch
Carl A. Frankovitch
Attorney for Plaintiff

Carl A. Frankovitch
Frankovitch Anetakis Simon DeCapio & Pearl LLP
337 Penco Road
Weirton, WV 26062
(800) 564-4050

Howard Kaplan*
Sarah Grady*
Matthew Underwood*
KAPLAN & GRADY LLC
2071 N. Southport Ave., Ste. 205
Chicago, Illinois 60614
(312) 852-2184

** W.D. Pennsylvania Admission Forthcoming*